FILED
CLERK, U.S. DISTRICT COURT

MAR 2 4 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

1

2

3

4

5

6

7

8           **UNITED STATES DISTRICT COURT**

9           **CENTRAL DISTRICT OF CALIFORNIA**

10                **WESTERN DIVISION**

11

12   JANET L. FILGER,                    )    No.  CV 07-2431-PLA
                                         )
13              Plaintiff,               )
                                         )    **MEMORANDUM OPINION AND ORDER**
14         v.                            )
                                         )
15   MICHAEL J. ASTRUE,                  )
     COMMISSIONER OF SOCIAL              )
16   SECURITY ADMINISTRATION,            )
                                         )
17              Defendant.               )
     _____)

18

19                              **I.**

20                         **PROCEEDINGS**

21         Plaintiff filed this action on April 13, 2007, seeking review of the Commissioner's denial of

22   her application for Supplemental Security Income.  The parties filed Consents to proceed before

23   the undersigned Magistrate Judge on April 30, 2007, and May 21, 2007.  Pursuant to the Court's

24   Order, the parties filed a Joint Stipulation on December 26, 2007, that addresses their positions

25   concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under

26   submission without oral argument.

27   /

28   /

## II.

## **BACKGROUND**

Plaintiff was born on September 9, 1949. [Administrative Record ("AR") at 50, 63.] She has a high school education [AR at 69, 374], and no past relevant work experience. [AR at 18, 69, 392.]

On June 30, 2004, plaintiff protectively filed her application for Supplemental Security Income payments, alleging that she has been unable to work since November 22, 1999, due to asthma, Addison's disease, and low immune system, resulting from exposure to toxic chemicals sprayed by Los Angeles County employees.[1] [AR at 17, 24-25, 28, 50-54, 84-88.] After her application was denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 34-35.] A hearing was held on April 17, 2006, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 371-95.] A vocational expert also testified. [AR at 392-94.] On May 2, 2006, the ALJ determined that plaintiff was not disabled. [AR at 17-23.] When the Appeals Council denied plaintiff's request for review on March 19, 2007, the ALJ's decision became the final decision of the Commissioner. [AR at 4-7.]

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

---

[1] On January 12, 2005, plaintiff filed amendments to her application concerning the "Living Arrangements" information noted in her initial application. [AR at 47-49.]

1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

## A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment

1 | in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

2 | sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

3 | and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to

4 | perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a

5 | prima facie case of disability is established.  The Commissioner then bears the burden of

6 | establishing that the claimant is not disabled, because she can perform other substantial gainful

7 | work available in the national economy.  The determination of this issue comprises the fifth and

8 | final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828

9 | n.5; Drouin, 966 F.2d at 1257.

10 |

11 | **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

12 |         In this case, at step one, the ALJ found that plaintiff had "not engaged in substantial gainful

13 | activity since the alleged onset of disability."  [AR at 18, 22.]  At step two, the ALJ concluded that

14 | plaintiff "has an alleged history of asthma and chemical exposure[,]" which "are considered

15 | 'severe' [impairments] based on the requirements in the Regulations[.]"  [AR at 18-19, 22.]  At step

16 | three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments

17 | in the Listing.  [AR at 19, 23.]  The ALJ further found that plaintiff retained the residual functional

18 | capacity ("RFC")[2] to perform "work not involving any concentrated exposure to pulmonary irritants

19 | (dust, fumes, chemicals, etc.), or to any extreme heat or cold."  [AR at 21, 23.]  At step four, the

20 | ALJ concluded that plaintiff did not have any past relevant work.  [AR at 23.]  At step five, the ALJ

21 | found, based on the vocational expert's testimony and application of Medical-Vocational Rule

22 | 204.00 as a framework, that there are a significant number of jobs in the national economy that

23 |

24 |

25 |

26 |

27 | _____

28 |         [2]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations.
   Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

plaintiff is capable of performing.[3]  [AR at 22-23.]  Accordingly, the ALJ determined that plaintiff is not disabled. [Id.]

# V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred in: (1) the evaluation of plaintiff's medical impairments; (2) the credibility findings; and (3) relying on the vocational expert's response to the incomplete hypothetical.  Joint Stipulation ("Joint Stip.") at 3.  As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

## EVALUATION OF PLAINTIFF'S MEDICAL IMPAIRMENTS

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; see also Lester, 81 F.3d at 830.  As a general rule, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).  Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).

Where the treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830.  Where the treating physician's opinion is contradicted by another physician, the ALJ may only reject the opinion of the treating physician

---

[3]  The ALJ also found that "[a]lthough [plaintiff's] exertional limitations do not allow her to perform the full range of all work[,]" based on her RFC, "she is capable of performing a significant range of work at all exertional levels as defined in 20 C.F.R. § 416.967."  [AR at 22-23.]

5

1  if the ALJ provides specific and legitimate reasons for doing so that are based on substantial

2  evidence in the record. Lester, 81 F.3d at 830; see Ramirez v. Shalala, 8 F.3d 1449, 1453-54 (9th

3  Cir. 1993). An examining physician's opinion based on independent clinical findings that differ

4  from the findings of a treating physician may constitute substantial evidence. Orn v. Astrue, 495

5  F.3d 625, 632 (9th Cir. 2007) ("Independent clinical findings can be either (1) diagnoses that differ

6  from those offered by another physician and that are supported by substantial evidence, (citation

7  omitted) or (2) findings based on objective medical tests that the treating physician has not herself

8  considered." (citation omitted)). However, even if an examining physician's opinion constitutes

9  substantial evidence, the treating physician's opinion is still entitled to deference.[4]  Id.; Social

10  Security Ruling[5] 96-2p (a finding that a treating physician's opinion is not entitled to controlling

11  weight does not mean that the opinion is rejected).  The ALJ must provide specific, legitimate

12  reasons for the rejection of a treating physician's opinion.  See 20 C.F.R. §§ 404.1527(d),

13  416.927(d) (requiring that Social Security Administration "always give good reasons in [the] notice

14  of determination or decision for the weight [given to the] treating source's opinion"); see also SSR

15  96-2p ("the notice of the determination or decision must contain specific reasons for the weight

16  given to the treating source's medical opinion, supported by the evidence in the case record, and

17  must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator

18  gave to the treating source's medical opinion and the reasons for that weight.").

19

20

21      [4]   "In many cases, a treating source's medical opinion will be entitled to the greatest weight and

22  should be adopted, even if it does not meet the test for controlling weight." Social Security Ruling
    96-2p.  In determining what weight to accord the opinion of the treating physician, the ALJ is

23  instructed to consider the following factors: length of the treatment relationship and frequency of
    examination; nature and extent of the treatment relationship; the degree to which the opinion is

24  supported by relevant medical evidence; consistency of the opinion with the record as a whole;
    specialization; and any other factors that tend to support or contradict the opinion.  20 C.F.R. §§

25  404.1527(d)(2)-(6), 416.927(d)(2)-(6).

26      [5]   Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they

27  "constitute Social Security Administration interpretations of the statute it administers and of its
    own regulations," and are given deference "unless they are plainly erroneous or inconsistent with

28  the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1    In the decision, the ALJ rejected the opinions of plaintiff's treating physicians because they

2  were not supported by objective medical findings.  [AR at 19.]  The ALJ further rejected those

3  opinions because the treating physicians are "'holistic' medical practitioners who cater to

4  [plaintiff's] unreasonable belief that she is physically debilitated from an alleged chemical

5  poisoning."  [AR at 21.]  Instead, the ALJ implicitly relies on the opinions of the consultative

6  examiners, i.e., the internal medicine evaluation of Dr. Adi Klein dated November 9, 2004, and the

7  psychological evaluation of Dr. Melanie K. Moran dated January 13, 2005.  [AR at 272-77, 310-

8  16.]  Plaintiff asserts that the ALJ failed to provide specific and legitimate reasons for rejecting the

9  opinions of plaintiff's treating physicians, Dr. James R. Privitera, Dr. Jesse Hanley, and Dr. Alan

10  Schwartz, and "to make further inquiry of the treating physician[s] regarding [the] perceived lack

11  of supporting evidence."  Joint Stip. at 4-7.  As discussed below, the Court agrees with plaintiff.

12    First, the ALJ noted that "[t]here are numerous medical records, reports and progress

13  notes" from Dr. Privitera and Dr. Hanley showing that plaintiff "has been treated for the past few

14  years for her apparent neurological, immunodeficiency, and respiratory symptoms."  [AR at 19.]

15  However, the ALJ asserted that "[w]hile both Dr. Privitera and Dr. Hanley have submitted several

16  brief assessments which contend that the claimant has been severely debilitated by her alleged

17  chemical poisoning, there are absolutely no objective medical findings which support these

18  opinions."  [Id.]  This conclusory assertion by the ALJ constitutes the same kind of non-specific

19  boilerplate language rejected by the Ninth Circuit as insufficient in Embrey v. Bowen, 849 F.2d

20  418, 421-23 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective

21  findings or are contrary to the preponderant conclusions mandated by the objective findings does

22  not achieve the level of specificity our prior cases have required, even when the objective factors

23  are listed seriatim.  The ALJ must do more than offer his conclusions.  He must set forth his own

24  interpretations and explain why they, rather than the [treating] doctors', are correct." (Footnote

25  omitted)).  See also McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (finding that the ALJ

26  rejecting the treating physician's opinion on the grounds that it was contrary to clinical findings in

27  the record, was "broad and vague, failing to specify why the ALJ felt the treating physician's

28  opinion was flawed").

1   Moreover, the ALJ's assertion that the opinions of Dr. Privitera and Dr. Hanley were not
2   supported by objective medical findings is not entirely accurate.  The records of Dr. Privitera and
3   Dr. Hanley support plaintiff's allegations that her health has been adversely affected by exposure
4   to toxic chemicals.  Both Dr. Privitera and Dr. Hanley treated plaintiff for several years.  Dr.
5   Privitera treated plaintiff from March 2000 to April 2006.  [AR at 92-113, 115, 129-33, 135-43, 145-
6   46, 148, 157-63, 174, 182, 184, 189-90, 192, 196-206, 213-14, 216-17, 235, 253-55, 264, 349-53.]
7   Dr. Hanley treated plaintiff from shortly after November 1999 through February 2006.  [AR at 114,
8   166-73, 175, 178-80,186, 191, 193, 343-47.]  Progress notes from those periods indicate that Dr.
9   Privitera and Dr. Hanley found that plaintiff suffered from severe asthma, respiratory distress,
10  neurologic and immune system damage, adrenal insufficiency, frequent long-term infections,
11  chronic fatigue, and memory loss.  [AR at 92, 99, 114-15, 168, 344-48, 350-51.]  In particular, the
12  results of the blood tests ordered by Dr. Privitera showed that plaintiff had "poor" neutrophilic[6]
13  viability, and the Complete Blood Count ("CBC")[7] ordered by Dr. Hanley showed a higher than
14  normal number of eosinophils.[8]  [AR at 99, 131, 172.]  Dr. Privitera indicated that plaintiff "showed
15  evidence of low immunity" based on "moderately clotting," and had non-motile white blood cells.
16  [AR at 350-52.]  During an office visit, Dr. Hanley noted that plaintiff suffered from bronchospasm.[9]
17  [AR at 346.]  Additionally, given that plaintiff's medical records report a history of illness, including
18  asthma, vertigo, and cognitive disorder in soft neurological areas [AR at 266, 272, 276, 294, 296,

19  _____

20  [6]   Neutrophils are a type of white blood cell that is responsible for much of the body's
     protection against infection.   http://medlineplus.gov (search "Search MedlinePlus," enter
21  Neutrophilic," select the "Neutrophils (image)" hyperlink).

22  [7]   A CBC gives important information about the kinds and numbers of cells in the blood,
     especially red blood cells, white blood cells, and platelets. http://dictionary.webmd.com/default.htm
23  (search under the letter "C," then select the "complete blood count (CBC)" hyperlink).

24  [8]   Eosinophils are a type of a white blood cell.  A high eosinophil count may be due to
25  asthma, autoimmune diseases, eczema, hay fever or leukemia. http://medlineplus.gov (search
     "Search MedlinePlus," then select the "Eosinophil count - absolute" hyperlink, then select the
26  "What Abnormal Results Mean" hyperlink).

27  [9]   Bronchospasm is a constriction of the muscles in the walls of the bronchi and
     bronchioles. http://dictionary.webmd.com/default.htm (search under the letter "B," then select the
28  "bronchospasm" hyperlink).

299, 301, 303, 305, 311-12, 314], the ALJ's rejection of the opinions of Dr. Privitera and Dr. Hanley as lacking supporting evidence itself lacks substantiation.[10]

Second, the ALJ's finding that plaintiff only sought treatment from "'holistic' medical practitioners who cater to [plaintiff's] unreasonable belief that she is physically debilitated from the alleged chemical poisoning" is not at all supported by the record.[11] [AR at 21.] The ALJ merely offered generalizations about the practices of plaintiff's treating physicians and made an unsupported assertion about the probative value of the opinions of those physicians without showing evidence of any actual impropriety by any of plaintiff's treating physicians. See Lester, 81 F.3d at 832 ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits.") (quoting Ratto v. Secretary, Dept. of Health and Human Services, 839 F.Supp. 1415, 1426 (D. Or. 1993)); see also Nguyen v. Chater, 100 F.3d 1462,

---

[10]   In the Joint Stipulation, defendant sets forth the regulatory definitions for "medical reports" and "medical opinions." Joint Stip. at 9-10. Defendant contends that Dr. Privitera's undated opinion letter [AR at 115] "did not meet the regulatory requirements for a medical report, in that it provided only general diagnoses and a conclusion that Plaintiff was disabled." Joint Stip. at 15. Defendant further contends that Dr. Privitera's statement dated April 13, 2006 [AR at 350-51] does not include "clinical or diagnostic corroboration of Plaintiff's numerous allegations, with the exception of an unexplained reference[] to low immunity based on 'moderately clotting.'" Joint Stip. at 15. Defendant asserts that Dr. Hanley's opinion letters were "similarly deficient." Joint Stip. at 16. However, in the decision, the ALJ did not offer any of these reasons advanced by defendant as a basis for rejecting the opinions of Dr. Privitera and Dr. Hanley. As such, defendant's *post hoc* attempt to justify the ALJ's rejection of the opinions of Dr. Privitera and Dr. Hanley is not sufficient to cure the error. See Vista Hill Foundation, Inc. v. Heckler, 767 F.2d 556, 559 (9th Cir. 1985) (a reviewing court may affirm an administrative decision only on grounds articulated by the agency); Barbato v. Commissioner of Social Sec. Admin., 923 F. Supp. 1273, 1276 (C.D. Cal. 1996) (a court may remand if the decision of the ALJ as to a claimant's entitlement to benefits on its face does not adequately explain how a conclusion was reached, even if Social Security Administration can offer proper *post hoc* explanations for such unexplained conclusions).

[11]   The fact that a treating physician is a licensed general practitioner with an orientation toward holistic medicine and alternative therapies, such as nutritional, vitamin, and herbal remedies, does not undermine the physician's classification as an "acceptable medical source" under the regulations. See 20 C.F.R. §§ 404.1513(a)(1), 416.913(a)(1) ("We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s)."). Even assuming that plaintiff's treating physicians are "'holistic' medical practitioners," that assumption alone does not render their opinions invalid, as there is no indication in the record whatsoever that plaintiff's treating physicians were not "licensed physicians," and thus "acceptable medical sources" under the regulations. See id. ("Licensed physicians" constitute "acceptable medical sources.").

1465 (9th Cir. 1996) (the source of report is a factor that justifies rejection only if there is evidence of actual impropriety or no medical basis for opinion) (citing <u>Saelee v. Chater</u>, 94 F.3d 520, 523 (9th Cir. 1996), <u>cert</u>. <u>denied</u>, 519 U.S. 1113 (1997)).  The record contains no evidence that Dr. Privitera, Dr. Hanley, or Dr. Schwartz inappropriately catered to plaintiff's belief that she is debilitated or embellished their assessments of plaintiff's limitations.[12]  See <u>Reddick v. Chater</u>, 157 F.3d 715, 725-26 (9th Cir. 1998) (holding that the ALJ erred in assuming that the treating physician's opinion was less credible because his job was to be supportive of the patient).

Next, the ALJ's statements that "there are absolutely no objective medical findings" to support the opinions of Dr. Privitera and Dr. Hanley, and that Dr. Schwartz's opinion "is entirely unsupported by any medical findings" should have triggered the ALJ's duty to seek further development of the record before rejecting those opinions. See <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (quoting <u>Smolen</u>, 80 F.3d at 1288).  If evidence from the medical source is inadequate to determine if the claimant is disabled, an ALJ is required to recontact the medical source, including a treating physician, to determine if additional needed information is readily available. See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.").  As a general rule, the record will be considered "inadequate" or "ambiguous" when a treating source has provided a medical opinion that is not supported by the evidence.  See

---

[12]   Although the only evidence in the record from Dr. Schwartz is a letter dated February 20, 2006, indicating that plaintiff "suffers from chronic fatigue syndrome brought on by exposure to toxic herbicides" [AR at 348], and the ALJ need not accept a treating physician's opinion that is "'brief and conclusionary in form. . .'" (<u>Magallanes</u>, 881 F.2d at 751 (citation omitted)), as discussed below, the ALJ had a duty to fully develop the record to the extent that Dr. Schwartz's opinion did not contain all the necessary information to allow the ALJ to properly evaluate the evidence, or did not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. (<u>See</u> discussion <u>infra</u>).

Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination.") (citation omitted); Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001). Here, the record was not sufficiently developed to permit the ALJ to properly reject the opinions of plaintiff's treating physicians to the extent the ALJ believed that the records of Dr. Privitera, Dr. Hanley, and Dr. Schwartz did not contain all the necessary information, or did not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. For instance, in light of the ALJ's expressed skepticism toward the opinions of the treating physicians as not being based on "objective medical findings," it would have required little effort on her part to recontact the treating physicians to determine the basis of their opinions. The ALJ should recontact these physicians on remand in order to resolve any inadequacies and fully develop the record. See 20 C.F.R. §§ 404.1519a(b)(4), 416.919a(b)(4) (where the medical evidence contains "[a] conflict, inconsistency, ambiguity, or insufficiency," the ALJ should resolve the inconsistency by recontacting the medical source).

Finally, the ALJ's summarization and implicit reliance on the evaluations of Dr. Klein and Dr. Moran, without more, is insufficient to constitute specific and legitimate reasons for the rejection of the treating physicians' opinions.[13] [AR at 17.] The ALJ may only give less weight to a treating physician's opinion that conflicts with that of another physician if the ALJ provides

---

[13]    This is especially true given Dr. Klein's notation in the internal medicine evaluation that "[t]here are no medical records available for review," and Dr. Moran's findings in the psychological evaluation that plaintiff "does show some deficits and probable deterioration from a previously better level of functioning[,]" and "[has a] cognitive disorder in soft neurological areas, affecting visual perceptual and overall performance organization." [AR at 272, 315.] In the decision, the ALJ ignored the fact that Dr. Klein did not review plaintiff's medical records. Moreover, while the ALJ noted Dr. Moran's findings in the decision, she selectively relied on the portions of Dr. Moran's evaluation that were favorable to her determination of nondisability. [AR at 20.] This is improper. See Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability") (citing Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984)).

1  sufficient specific and legitimate reasons for discounting the opinion. See Lester, 81 F.3d at 830;

2  see also Orn, 495 F.3d at 632-33.  Here, the ALJ merely summarizes the opinions of the

3  consultative examiners and implicitly adopts those opinions rather than the opinions of Dr. Privitera

4  and Dr. Hanley, without offering any specific and legitimate reasons for giving less weight to the

5  opinions of Dr. Privitera and Dr. Hanley, and greater weight to the opinions of the consultative

6  examiners.  Generally, more weight is given to the opinions of treating physicians because they

7  "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of

8  [the claimant's] medical impairment(s) and may bring a unique perspective to the medical

9  evidence that cannot be obtained from the objective medical findings alone or from reports of

10  individual examinations, such as consultative examinations or brief hospitalizations." See 20

11  C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Both Dr. Privitera and Dr. Hanley treated plaintiff for an

12  extended period, performed tests, and prescribed medications as evidenced by the progress notes

13  contained in the medical record. [AR at 92-113, 129-43, 145, 148, 158-63, 166-75, 178-82, 184,

14  186, 189-93, 196-206, 213-14, 235, 253-55, 264.]  See 20 C.F.R. §§ 404.1527(d)(2)(i), (ii),

15  416.927(d)(2)(i), (ii) (weight accorded to a treating physician's opinion dependent on length of the

16  treatment relationship, frequency of visits, and nature and extent of treatment received).  Based

17  on the length of the treatment and both physicians' experience with plaintiff, Dr. Privitera and Dr.

18  Hanley had the broadest range of knowledge regarding plaintiff's medical condition. See Smolen,

19  80 F.3d at 1279; see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Lester, 81 F.3d at 833

20  ("The treating physician's continuing relationship with the claimant makes him especially qualified

21  . . . to form an overall conclusion as to functional capacities and limitations, as well as prescribe

22  or approve the overall course of treatment.").

23      Accordingly, the ALJ erred by not giving any specific and legitimate reasons supported by

24  substantial evidence in the record for rejecting the opinions of plaintiff's treating physicians.  As

25  such, remand is warranted on this issue.[14]

26

27  _____

      [14]  As the ALJ's consideration on remand of the treating physicians' opinions may impact

28  on the other issues raised by plaintiff in the Joint Stipulation, the Court will exercise its discretion
      not to address those issues in this Order.  Rather, upon remand, the ALJ should re-examine plaintiff's

# VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to properly consider the opinions of plaintiff's treating physicians. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: March 24, 2008

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

credibility and ensure that the hypothetical presented to the vocational expert accurately reflects the extent of plaintiff's limitations.

13